## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DAVID COPELAND-JACKSON

        **Plaintiff,**

vs.                                              Civil Action No. 08-00558 (ESH)

IRV OSLIN, et al.

        **Defendants.**

### DEFENDANTS' OPPOSITION TO THE MOTION TO REMAND

I.    INTRODUCTION

      The issue before the Court is whether the amount in controversy could reasonably exceed the "sum or value" of $75,000 to confer subject matter jurisdiction upon this Court.  Plaintiff claims in his Motion to Remand that it does not, arguing that he can state to the penny the amount of his unliquidated claim, and that the precise value of the claim just happens to be two cents less than the jurisdictional minimum.  This is the same plaintiff who obtained a $3,000,000 default judgment in a libel action against Joseph Cutlip for making substantially similar statements as alleged against defendants here.[1]  Plaintiff also claims that the "other relief" he has requested has no potential monetary value, disclaiming punitive damages and pointing to potential equitable relief as his "other relief."  However plaintiff may attempt to characterize the

---

[1]  Mr. Cutlip is the young man whom plaintiff was accused of molesting.  Plaintiff entered a nolo plea to two counts of "gross sexual imposition" involving two teenagers, including Cutlip.  *See Copeland-Jackson v. Cutlip*, U.S.D.C., D.C., Civ. No. 07-01124 (ESH), Order filed 09/13/2007 [Dkt # 28], attached as Exhibit C to Notice of Removal.  Plaintiff allegedly used a fraudulently obtained "affidavit" that supposedly recanted Cutlip's claim that plaintiff molested him.  This Court has referred the matter to the FBI for investigation.  *Id.*  Plaintiff's confederate, Peter J. Brandel, is about to be tried in Ohio for forgery and for using a sham legal process in connection with the procurement of the fraudulent affidavit.  *See* Exhibits D, E, and F to Notice of Removal.

"other relief" he has requested, its value, as shown below, must necessarily exceed two cents, and his claim accordingly exceeds the sum or value of $75,000.

Moreover, plaintiff's specified damages in the amount of $74,999.99 is a bad faith attempt to defeat the defendants' statutory right of removal so as to avoid coming before a court familiar with his conduct. This Court has previously expressed disapproval of such attempts to evade federal jurisdiction, stating that "the 'claim, whether well or ill founded in fact, fixes the right of the defendant to remove' because if a plaintiff could 'reduce the amount of his demand to defeat federal jurisdiction the defendant's supposed statutory right of removal would be subject to the plaintiff's caprice.'" *Griffin v. Coastal Int'l Sec. Inc.*, 2007 U.S. Dist. LEXIS 40041 (D.D.C. June 4, 2007) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 284 (1938)).

This case also belongs here. It is inextricably intertwined with plaintiff's criminal conviction and his defamation suit against Cutlip, which is currently stayed in this Court. *Copeland-Jackson v. Cutlip*, Civ. No. 07-01124 (D.D.C) (ESH), Order filed 09/13/2007 [Dkt # 28]. Plaintiff claims that Cutlip defamed him by telling third parties that plaintiff had "engaged in certain homosexual activities" with Cutlip. *Copeland-Jackson v. Cutlip*, Civ. No. 07-01124 (D.D.C) (ESH), Am. Complaint filed 07/04/2007 [Dkt. # 4], at ¶ 3, attached hereto as Ex. A. In the instant case, plaintiff claims defamation on the basis of three news articles which refer to plaintiff's convictions of molesting young boys and uses the term "pedophile."[2] (Pl.'s Mot. at 1.) These articles report on the indictment of Peter J. Brandel, who was charged with forgery and the

---

[2] To be clear, the allegedly defamatory statements plaintiff charges Cutlip and the instant defendants with are both based on the same fact: that plaintiff "engaged in certain homosexual activities" with Cutlip while he was a minor. Since truth is an absolute defense to defamation, as this Court suggests, "it is highly doubtful that plaintiff can state a valid claim of defamation." *Copeland-Jackson v. Cutlip*, Civ. No. 07-01124 (D.D.C.) (ESH), Judgment filed 09/13/2007 [Dkt #28], attached as Ex. C to Notice of Removal.

use of a sham legal process in connection with procuring the "affidavit" that plaintiff used in his suit against Cutlip. *See* Exs. D, E, and F to Notice of Removal [Dkt # 1].

Because plaintiff's complaint requests damages and other relief in an amount that could reasonably exceed the value of $75,000, and because plaintiff's suggestions to the contrary are merely a bad faith attempt to defeat defendants' statutory right of removal, this Court should deny plaintiff's Motion for Remand and retain jurisdiction over the instant case.

II.    <u>ARGUMENT</u>

This action was properly removed to federal court because there is complete diversity between the plaintiff and defendants, and the amount in controversy exceeds the jurisdictional threshold of $75,000. Plaintiff concedes in his Motion for Remand that diversity among the parties exists (Pl.'s Mot. at p. 1), and as shown below, the real amount in controversy exceeds the sum or value of $75,000.

The propriety of removal depends on whether the removed case originally could have been filed in federal court. *See City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 163 (1997). A complaint involving diversity jurisdiction should only be remanded where it is a "legal certainty" that the plaintiff's bundle of claims do not have a potential value (whether monetary or otherwise) in excess of the jurisdictional amount. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *Griffin*, 2007 U.S. Dist. LEXIS 40041, at *6 (applying legal certainty standard). Whether the plaintiff will actually recover any particular amount is irrelevant; the question is whether the complaint raises issues that implicate a controversy exposing the defendants to a potential financial impact greater than the jurisdictional minimum. *See St. Paul Mercury*, 303 U.S. at 293-94.

The amount in controversy is evaluated against a reasonable reading of the value of the rights asserted in the Complaint. *See Angus v. Shiley, Inc.*, 989 F.2d 142, 146 (3d Cir. 1993). This evaluation must include not only the reasonable value of potential compensatory damages, but the value of potential punitive damages as well. *See Bell v. Preferred Life Assur. Soc'y of Montgomery*, 320 U.S. 238, 242-43 (1943) (evaluating potential punitive damages in amount in controversy inquiry); *Nwachukwu v. Karl*, 223 F. Supp. 2d 60, 66 (D.D.C. 2002) (same). So too must a court consider the potential cost or financial impact of equitable relief in deciding whether the claim exceeds the jurisdictional amount. "[A] plaintiff may not defeat removal simply by characterizing a case as involving equitable claims rather than damages, or by seeking less than the requisite amount in controversy when the court is informed that the value of the interest to be protected exceeds that amount." *Corwin Jeep Sales & Service, Inc. v. American Motors Sales Corp.*, 670 F. Supp. 591, 596 (M.D. Pa. 1986). A court should consider the value of the right sought by a plaintiff or the cost of compliance to the defendant if a court orders the defendant to take specified action in determining the "value" in controversy. *Committee for GI Rights v. Callaway*, 518 F.2d 466, 472 (D.C. Cir. 1975). For removal purposes, the amount in controversy is determined on the basis of the record existing at the time the petition for removal is filed. *See Nwachukwu*, 223 F.Supp.2d at 66.

A.    Plaintiff Has Requested Relief That Exceeds $75,000.

On the face of his complaint, plaintiff's requested relief and damages exceed the jurisdictional minimum. Plaintiff requests judgment for $74,999.99, plus interest, costs, and attorney's fees and "any other relief that he may be entitled to at law and equity." (Complaint, ¶ 20.) Because plaintiff "calculated" his damages to within two cents of the jurisdictional threshold, any "other relief" imaginable would push the amount of requested relief above the

$75,000 mark to a legal certainty.  Punitive damages can sometimes be double or treble the amount of compensatory damages, so they would no doubt exceed the two cents required to confer jurisdiction on this Court.

Although plaintiff appears to claim that he does not request punitive damages (*see*, Pl.'s Mot. at p. 2), his demand for judgment is broad enough to encompass them, and punitive damages are potentially available for the types of claims raised in plaintiff's complaint.  *E.g.*, *Houlahan v. World Wide Ass'n of Specialty Programs,* 2006 U.S. Dist. LEXIS 71858 at *28 (D.D.C. Sept. 29, 2006) ("a successful libel plaintiff can recover three types of damages - - nominal, compensatory or punitive").

Furthermore, plaintiff allows that we "are free to guess that 'other relief' could come as an injunction or an order to publicly apologize and correct the articles."  (Pl.'s Mot. at p. 2.) Assuming, *arguendo*, that an injunction or an order to do anything might be available to the plaintiff, either of those options would cost defendants more than two cents.  Indeed, ad space in a newspaper, where every word counts, would be quite costly.  Even the cost in time of preparing a "statement" would exceed two cents.  Since any "other relief" imaginable – whether punitive damages or relief at equity – would necessarily be worth more than two pennies, the total value of the claims as asserted in the complaint exceeds $75,000.

      B.     <u>Plaintiff's Assertion of Damages in the Amount of $74,999.99</u>
<u>             Is a Bad Faith Attempt to Manipulate Jurisdiction</u>.

Even if no other relief were available, the amount claimed by plaintiff only controls for jurisdiction purposes if it is made in "good faith."  *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938).  While a plaintiff is ordinarily the master of his or her own complaint, (*id.)*, the rationale behind this presumption is that "[e]very lawyer is an officer of the court" who "always has a duty of candor to the tribunal," so the court generally assumes that

"plaintiff's counsel best knows the value of his client's case and that counsel is engaging in no deception." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).

This rationale does not apply to the instant case. Plaintiff is not an officer of the court. Rather, he is a convicted felon who has already demonstrated to the court his capacity and willingness to deceive and manipulate the legal system in order to achieve his goals. *See Copeland-Jackson v. Cutlip*, Civ. No. 07-01124 (D.D.C.) (ESH), Order filed 09/13/2007 [Dkt #28] (administratively closing Copeland-Jackson's action against defendant Cutlip for defamation, fraud, civil conspiracy and false light "pending an investigation that is now being conducted, at the Court's request, by the Federal Bureau of Investigation"). While plaintiff claims not to know that his prayer of $74,999.99 just happened to be two cents below this Court's jurisdictional threshold, his actions, including those now under investigation by the FBI relating to the fraudulent procurement of a $3 million default judgment, suggest that he knows the legal system all too well. *See id.* (noting that plaintiff entered a "nolo plea . . . to two counts of 'gross sexual imposition' involving two teenagers, including the defendant herein, served three years in jail and is now under parole supervision in this jurisdiction").

This Court's Orders of August 8, 2007 and September 13, 2007 in plaintiff's case against Cutlip demonstrate that plaintiff should not be trusted as though he were an "officer of the court" and in fact has attempted to deceive the court and manipulate the legal system. They also reflect that plaintiff has previously represented to this court that he believes a claim for defamation based on statements about his sexual conduct with minors is worth $3 million.[3]

---

[3]  Other evidence in the record of plaintiff's case against Cutlip reveals that plaintiff has a history of backtracking from positions once the implausibility of his claims are revealed. *See, e.g., Copeland-Jackson v. Cutlip,*, Civ. No. 07-01124 (D.D.C.) (ESH), Notice filed 10/09/2007 (Dkt. # 29) attached hereto as Ex. B (letter from Copeland-Jackson requesting to withdraw information regarding jurisdictional allegations because the information he received was "inaccurate," and

Moreover, when a plaintiff alleges damages up to the jurisdictional limit, federal courts have interpreted the prayer for relief as a bad faith attempt to evade jurisdiction and have looked instead to the actual claims in the complaint to determine whether the jurisdictional amount is exceeded. *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995) ("As a functional matter, plaintiffs are attempting to avoid federal jurisdiction. This goal is the same whether they pick a number such as $49,999 or merely announce a ceiling that, conveniently, is barely within the statutory limit"); *see also Parnell v. State Farm Mut. Auto. Ins. Co.*, 173 F.R.D. 446, 448 (W.D. Ky. 1997) (looking to the actual claims alleged in the complaint rather than the prayer for relief in determining amount in controversy).

Here, plaintiff alleges multiple causes of action, including libel, libel per se, negligence, false light, invasion of privacy, and infliction of emotional distress. (Compl. ¶ 19.) He alleges that he lost an employment opportunity due to the newspaper publications, and that defendants caused injury to his personal reputation. (*Id.* at ¶¶ 16-17.) Plaintiff also alleges that he "has suffered stress, depression, chest pains, fear of going out in public, anxiety, loss of appetite, insomnia and nightmares, migraines, cognitive dissonance, fear of loss of livelihood, and loss of status/social isolation," due to defendants' publications. (*Id.* at ¶ 18.) Plaintiff alleges that defendants acted "recklessly and negligently" in publishing the articles, and that such articles "demonstrate and establish the defendants' animus" toward plaintiff. (*Id.* at ¶¶ 5-6.)

Such claims against multiple defendants, if proven, could result in damages far exceeding the jurisdictional threshold of $75,000. That plaintiff believes these claims are worth more than

---

claiming that "an inquest from the FBI has caused people to forget or to no longer stand by the information they initially passed on"). This case involves a similar implausible assertion of jurisdiction. No one in the District of Columbia subscribes to *The Ashland Times* (which is published by defendant Dix Communications), and the only subscriber to the full on-line version of *The Ashland Times* who resides in the District of Columbia is a certain "D. Jackson" who happens to list the same address as plaintiff.

the jurisdictional threshold is obvious from the $3 million in damages he claimed in his private-individual defamation case against Cutlip.  Here, plaintiff claims that a similar statement, published in three newspaper articles, damaged him to the tune of precisely $74,999.99.  On its face, plaintiff is using "artful pleading" to "evade federal jurisdiction."

Thus, plaintiff's reliance on *St. Paul Mercury* that the amount that he has claimed in his complaint "controls the 'amount in controversy' calculus" is misplaced.  (Pl.'s Mot. at p. 2.) Recent case law has shown that where, as here, a plaintiff manipulates the amount in controversy, this rule from *St. Paul Mercury* does not control.  *See, e.g., Parnell,* 173 F.R.D. at 447 (denying plaintiff's motion to remand because a plaintiff may claim an artificially low damage amount to defeat jurisdiction while actually seeking and obtaining damages in excess of the requirement); *Corwin Jeep Sales & Serv., Inc. v. Am. Motor Sales Corp.*, 670 F. Supp. 591, 596 (M.D. Pa 1986) (stating that plaintiff may not defeat removal by seeking less than jurisdictional amount when court is informed that amount in controversy exceeds required amount); *Steele v. Underwriters Adjusting Co.*, 649 F. Supp. 1414, 1416 (M.D. Ala. 1986) ("A plaintiff should not be allowed to deprive a defendant of his right to remove through artful pleading practices").

As many courts have found, the Supreme Court's decision in 1938 in *St. Paul Mercury* needs to be understood in the context of changes to the rules of civil procedure.  As one district court has stated, "the *St. Paul Mercury* Court spoke at a time when few or no state courts permitted amendment of pleadings to conform with a final judgment, and a plaintiff who voluntarily limited the amount in controversy would have been limited in fact to the amount plead." *Feldman v. New York Life Ins. Co.*, 1998 U.S. Dist. LEXIS 2301, at *15 (E.D. Pa. Mar. 4, 1998) (holding that plaintiffs could not defeat defendants' statutory right of removal simply by

praying for damages "not to exceed $75,000" because evaluation of the plaintiffs' claim demonstrated that the real amount in controversy was greater than $75,000). Indeed, "[t]his change in law entirely undercuts the sacrifice that the *St. Paul Mercury* Court assumed a plaintiff would need to make if he wished to defeat the defendant's right of removal." *Id.*

Similarly, in *De Aguilar,* the Fifth Circuit rejected a plaintiff class' attempts to avoid federal jurisdiction by pleading an amount in controversy "not to exceed" the then $50,000 jurisdictional amount, finding that the pleading was made in bad faith. 47 F.3d at 1409-10. The court noted how most states now have rules of civil procedure that permit a plaintiff to amend his pleadings as to damages at any time or receive whatever damages a jury determines regardless of the amount claimed. The Fifth Circuit concluded:

> These new rules have created the potential for abusive manipulation by plaintiffs, who may plead for damages below the jurisdictional amount in state court with the knowledge that the claim is actually worth more, but also with the knowledge that they may be able to evade federal jurisdiction by virtue of the pleading. *Such manipulation is surely characterized by bad faith.*

*Id.* at 1410 (emphasis added). *Accord, McCoy v. Erie Ins. Co.*, 147 F.Supp.2d 481, 485 (S.D. W. Va. 1995) (noting that "[m]any state court systems . . . have interpreted their civil rules amendments in a way that encourages an adroit plaintiff to deny a diverse defendant access to the federal forum and yet, later, expose that defendant to a damage award that would have supported exercise of federal jurisdiction," and that only a plaintiff's binding stipulation filed contemporaneously with the complaint that he would not seek nor accept more than $75,000 could limit the potential recovery).

Plaintiff's contention that he has suffered damages in the precise amount of $74,999.99 is essentially the same as the *ad damnum* clauses the above-cited cases have rejected, and it is a bad faith attempt to evade this Court's jurisdiction.

III.    <u>CONCLUSION</u>

For each of the foregoing reasons, the Court should deny the motion to remand and retain jurisdiction over this matter.

Respectfully submitted,

/s/ *Mark I. Bailen*
Mark I. Bailen (459623)
BAKER & HOSTETLER, LLP
1050 Connecticut Avenue N.W.
Suite 1100
Washington, D.C. 20036
Tel: (202) 861-1500
Fax: (202) 861-1783
Email: *mbailen@bakerlaw.com*

Louis A. Colombo (0025711)
Melissa A. DeGaetano (0080567)
BAKER & HOSTETLER, LLP
3200 National City Center
1900 East Ninth Street
Cleveland, OH 44114-3485
Telephone: (216) 621-0200
Facsimile: (216) 696-0740

Counsel for Defendants

## <u>CERTIFICATE OF SERVICE</u>

A copy of the foregoing Defendants' Opposition to Motion to Remand which was electronically filed on this 15th day of April, 2008, was served by U.S. mail, postage prepaid, on this 15th day of April, 2008 upon the following:

David Copeland-Jackson
2542 Naylor Road SE #20
Washington, D.C. 20020

Plaintiff *Pro Se*

*/s/ Mark I. Bailen*

United States District Court
District of Columbia

David Copeland-Jackson,

       Plaintiff,

v.                                   Case Number: 1:07-cv-01124

Joseph Cutlip,                   Judge Ellen S. Huvelle

          Defendant.

<u>Amended Complaint</u>

       Plaintiff now amends his complaint filed on June 22, 2007 pursuant to rule 15 of the rules of civil procedure.

       Plaintiff incorporates the averments in his original complaint as if written verbatim herein, except as amended below.

2.      Plaintiff seeks remedy for defamation against Defendant, whose actions included false comments to third parties that Plaintiff engaged in certain homosexual activities with Defendant. Defendant stated to Robert Renfroe, Paul Tracy, Peter Brandel, and others that "Plaintiff performed oral sex on defendant and Joshua Helms", in addition to other "deviant" sexual activities. Plaintiff is Black, and both, the defendant and Joshua Helms are white. Defendant's defamatory statements are not protected by privilege or any other legal provision.

3.      Defendant repeated his defamatory acts on several occasions with the intent of putting Plaintiff in false light. Statements to Robert Renfroe and Paul Tracy are actionable even though Renfroe and Tracy are presently unavailable in order to confirm the time frame that Defendant told them Plaintiff engaged in homosexual activities with the defendant and Joshua Helms. Notwithstanding, Defendant's statements to Peter Brandel on May 8, 2007, that "Plaintiff performed oral sex on the defendant and Joshua Helms among other sexual activities" were defamatory.

4.      Defendant made his statements with full knowledge that the information was false. Defendant avoided all of Plaintiff's attempts to meet the defendant in order to ascertain and confirm, or to otherwise clarify, the defendant's statements about Plaintiff. Defendant refused, or otherwise failed, to tell Plaintiff that Defendant was making or had made the statements about Plaintiff. Moreover, Defendant did not take action to stop or correct the statements that were being widely reported by Robert Renfroe, Paul Tracy, and others as having been made by the defendant against Plaintiff.

RECEIVED

JUL - 5 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

(a)    Joseph Cutlip endorsed two separate affidavits on May 8, 2007 admitting that Cutlip lied when he stated that Plaintiff engaged in homosexual activities with Joshua Helms and the defendant.

(b)    Mr. Brandel filed an affidavit in this court, which contains a redacted copy of one of the defendant's affidavits marked as exhibit A. Both, Mr. Brandel's affidavit and the defendant's redacted affidavit establish that the defendant admitted to lying when defendant stated that Plaintiff engaged in homosexual activities with the defendant and Joshua Helms.

(c)    Plaintiff attaches the defendant's second affidavit as <u>Exhibit 1</u> wherein defendant clearly states in paragraphs 5 and 6 that Plaintiff did not have sex with the defendant and that the defendant lied when the defendant stated that plaintiff engaged in sexual activities with the defendant and Joshua Helms.

Wherefore, Plaintiff now demands a judgment against the defendant for defamation for three million dollars, plus costs and fees.

Respectfully Submitted

David Copeland-Jackson
Plaintiff

## Certification

Pursuant to section 1746 of title 28 of the United States Code, I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

David Copeland-Jackson

## Proof of Service

I, David Copeland-Jackson, do hereby certify that a true copy of this amended complaint was sent by ordinary mail with postage pre-paid to Joseph Cutlip at 273 Lee Avenue, Ashland, Ohio 44805 on this 25 day of June 2007.

David Copeland-Jackson

2

State of Ohio

                ss.

County of Ashland

| *Exhibit 1* |
| --- |

***Affidavit of Joseph Cutlip***

I, Joseph P. Cutlip, first, being duly sworn according to law and under the penalty of perjury, do hereby depose and state the following true information, events, and circumstances.

1. My name is Joseph Cutlip and I reside at 273 Lee Avenue, Ashland, Ohio 44805.

2. I did speak with Mr. Peter Brandel on May 8, 2007. Mr. Brandel did not coerce or otherwise force, threaten, pressure, manipulate, or intimidate me into giving this statement. Moreover, Mr. Brandel did not give or promise me anything for this statement.

3. I knowingly, voluntarily, and intelligently admitted the facts contained in this statement. I have fully considered the meaning of my statements and actions.

4. I state that I have never had a mental condition of any kind as a minor or as an adult. Moreover, I have never suffered from any kind mental/psychological or physical condition that has substantially impaired my abilities to resist or consent to sexual activity. I have never suffered from a physical or mental disability of any kind, and presently do not have a physical or mental disability.

5. I did not have any kind of sexual contact with David Copeland-Jackson at any time- in any place, and I did not witness David Copeland-Jackson having any kind of sexual contact with Joshua Helms at any time- in any place.

6. I willfully lied, did not tell, or otherwise purposely misrepresented the truth when I told Peter Brandel, Robert Renfroe, Paul Tracy, and other people that David Copeland-Jackson had performed oral sex on, and engaged in other sexual activities with, Joshua Helms and me.

Further, Affiant sayeth nought.

_Joseph P. Cutlip_
Joseph P. Cutlip

_5-8-07_          _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_
Date                     Social Security

Sworn to and Subscribed in My Presence on this _8th_ day of _May 2007_, 2007.

_Charlotte M Nault_
Notary Public

Charlotte S. McNault
Notary Public, State of Ohio
My Commission Expires _4/3/2012_

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

David Copeland-Jackson,
      Plaintiff,

v.                                                 Case Number: 1:07-cv-01124 ESH

Joseph Cutlip,
      Defendant.

### Notice

    Plaintiff gives notice that he has attempted to confirm the information presented
to support his prima facie showing of jurisdiction of Plaintiff's claims in this Court.
Plaintiff has been unable to confirm information offered to support jurisdiction. Plaintiff
relied on the information given to him by these witnesses, whom validated the
information to the plaintiff without truly ensuring its accuracy. The claim that the
defendant has worked or has family in this area does not appear to be accurate and
apparently arose from a name mix-up and reliance on an out-of-date background record
from an online service. Plaintiff now withdraws such information. Plaintiff's presentation
of this information without confirming it was unintentional mistake and done in good
faith and without any intent to deceive the court or the parties, or to otherwise prevent a
fair adjudication of the claims on the merits. Plaintiff must, therefore, rely on Mr.
Brandel's information and the defendant's actions directed at the plaintiff while in this
forum and the waiver of challenges to jurisdiction to support the court's ability to hear
the case. In the alternative, Plaintiff request to transfer the case to the U.S. District Court
for the Northern District of Ohio, in Cleveland, Ohio.

                    Respectfully Submitted

                    David Copeland-Jackson
                    Plaintiff

### Certificate of Service

I certify that a true copy of this notice was sent by ordinary mail with postage prepaid to
Joseph Cutlip at 273 Lee Avenue, Ashland, Ohio 44805 on this 24 day of September,
2007.

                    David Copeland-Jackson
                    Plaintiff

September 24, 2007

Judge Ellen Segal Huvelle
United States District Court for the District of Columbia
333 Constitution Avenue, NW
Washington, D.C. 20001

Let this
be h4d
ESH
10|9|07

RE: 1:07-cv-01124

Dear Judge Huvelle:

     I wanted to write to you to inform you that I have tried to follow-up with your concerns regarding this case. You stated that you were initiating an investigation so as to determine if the consent judgment was improperly induced.

     I have also attempted to look into this. I requested feedback and additional information from people that assisted me in preparing for this case. I have not been able to secure some of the information that I need because folks are unavailable or have otherwise clammed up. Apparently, an inquest from the FBI has caused people to forget or to no longer stand by the information that they initially passed on to me. Some fear getting into trouble with the government because they were operating businesses without the appropriate bondings and licenses, as well as other concerns that I was not aware of before.

     I want you to know that I am not able to confirm that Mr. Cutlip has either worked or has family in this area. I must withdraw that information since it appears that it is inaccurate. This information was presented to establish that Mr. Cutlip had minimal contacts with this forum. I withdraw such information. I will make the appeals court of this without delay. Now, without this information, I must rely on Mr. Cutlip's appearances and acts directed at me while in this forum in order to support this court's jurisdiction. In the alternative, I request to transfer the case to the U.S. District Court in Cleveland, Ohio.

     I would like to file the attached notice, but your last order indicated that no other pleadings should be filed. This notice is important so as to make the parties and the court aware of this issue.

     Thank you so much for your time.

Respectfully,

David Copeland-Jackson

Cc: Clerk, U.S. District Court
    Clerk, D.C. Circuit
    Joseph Cutlip

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| DAVID COPELAND-JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO.: 1:08-cv-00558 (ESH) |
| | ) | |
| IRV OSLIN   and | ) | |
| DIX COMMUNICATIONS, | ) | |
| | ) | |
| Defendants. | ) | |

<u>ORDER</u>

On this _____ day of _____, 2008, upon consideration of plaintiff's Motion for

Remand, defendants' opposition thereto and any reply, it is hereby

ORDERED that the Motion for Remand is hereby DENIED.

_____
ELLEN S. HUVELLE
United States District Judge