## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**DAVID COPELAND-JACKSON**

        **Plaintiff,**

**vs.**

**IRV OSLIN, et al.**

        **Defendants.**

**Civil Action No. 08-00558 (ESH)**

**MOTION OF DEFENDANTS
IRV OSLIN AND
DIX COMMUNICATIONS
TO DISMISS**

Defendants Dix Communications and Irv Oslin hereby move this Court pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure to Dismiss this case on the grounds that (1) the Court lacks personal jurisdiction over the defendants, and (2) plaintiff has failed to state a claim upon which relief can be granted.  A Brief in Support and the Declarations of Troy Dix and Irv Oslin are being submitted herewith and are incorporated herein.

_/s/ Mark I. Bailen_
Mark I. Bailen (459623)
BAKER & HOSTETLER, LLP
1050 Connecticut Avenue N.W.
Suite 1100
Washington, D.C. 20036
Tel: (202) 861-1500
Fax: (202) 861-1783
Email: _mbailen@bakerlaw.com_

LOUIS A. COLOMBO (0025711)

MELISSA A. DEGAETANO (0080567)
BAKER & HOSTETLER, LLP
3200 National City Center
1900 East Ninth Street
Cleveland, OH 44114-3485
Telephone: (216) 621-0200
Facsimile: (216) 696-0740
Counsel for Defendants

## <u>CERTIFICATE OF SERVICE</u>

A copy of the foregoing Defendants' Motion to Dismiss which was electronically filed on this 25th day of April, 2008, was served by U.S. mail, postage prepaid, on this 25th day of April, 2008 upon the following:

David Copeland-Jackson
2542 Naylor Road SE #201
Washington, D.C. 20020

Plaintiff *Pro Se*

/s/ *Mark I. Bailen*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DAVID COPELAND-JACKSON

          **Plaintiff,**

vs.

IRV OSLIN, et al.

          **Defendants.**

Civil Action No. 08-00558 (ESH)

**BRIEF IN SUPPORT OF MOTION OF DEFENDANTS IRV OSLIN AND DIX COMMUNICATIONS TO DISMISS**

## PRELIMINARY STATEMENT

Plaintiff brought this suit in the District of Columbia against an Ohio newspaper and its reporter, an Ohio resident, about articles published in the Ashland (Ohio) Times-Gazette (the "Articles") and circulated in Ohio, concerning crimes that previously took place in Ohio and alleged criminal conduct by a third party in Ohio who is currently being prosecuted in Ohio. Neither defendant has sufficient minimum contacts with the District of Columbia to support personal jurisdiction, and the court should dismiss this case pursuant to Rule 12(b)(2).

Furthermore, the articles at issue are not defamatory because they do not make any false statements about plaintiff. Accordingly, this case can be dismissed on the merits pursuant to Rule 12(b)(6) because plaintiff cannot demonstrate that the statements in the articles are false, an essential element of his claim.

<u>STATEMENT OF FACTS</u>

A.    <u>The Parties.</u>

Plaintiff David Copeland-Jackson is a resident of the District of Columbia. (Complaint ("Compl."), caption.)[1]  He claims to live at 2542 Naylor Road SE #201, Washington, D.C. 20020.  (*Id.*)  In 2000, plaintiff was convicted in Ohio of violating Ohio Revised Code Section 2907.05 (A)(5), gross sexual imposition.  (Compl. at ¶ 3.)

The named defendants are Irv Oslin, the reporter who authored the Articles;  Dix Communications, which plaintiff alleges is the publisher of the Articles that appeared in the Ashland Times-Gazette (Compl. ¶ 2)[2]; and Topix, LLC, an unrelated operator of a news website that re-republished materials from the Ashland Times-Gazette, among many other news providers.  (Amended Complaint ("Am. Compl."), at ¶ 2(a).)  Dix Communications is named in error.  The Ashland Times-Gazette is actually published by Ashland Publishing Co., LLC ("Ashland Publishing"), a Delaware limited liability company located at 40 East 2nd Street, Ashland, Ohio 44805.  See Declaration of Troy Dix ("Dix Decl."), at ¶ 12, a copy of which is attached as Exhibit A.

Reporter Irv Oslin is a resident of Ohio.  See Declaration of Irvin Oslin ("Oslin Decl."), at ¶ 2, a copy of which is attached hereto as Exhibit B.  Oslin has never been a resident of the District of Columbia, has never worked in the District, and has never conducted any business in the District.  (Oslin Decl. ¶¶ 3-5.)  Oslin prepared and wrote the Articles in Ohio.  (*Id.* at ¶ 7.)  In preparing the Articles, he did not visit the District,

---

[1] Because plaintiff, in his Amended Complaint, does not restate the allegations in the original complaint, but instead modifies or supplements them, defendants will cite to the original complaint or the amended complaint as appropriate.
[2] Specifically, plaintiff alleges that "Dix Communications website (www.dixcom.com) owns the Ashland Times Gazette newspaper and operates the website (www.times-gazette.com)."

and all of his substantive interviews or contacts made in connection with the Articles were done with individuals in the state of Ohio. (*Id.* at ¶¶ 7-8.)

The Ashland Times-Gazette is a local Ohio newspaper that circulates primarily in Ashland County, Ohio, with some limited content also published on its website. (Dix Decl. ¶ 4.) It is a small-town community newspaper, the whole focus of which is to provide complete information about Ashland County to residents of Ashland County. (*Id.*) The Ashland Times-Gazette's website was created as a "hyper-local" site which serves as a source of news, weather and information for and about Ashland County. (*Id.* at ¶ 6.) It was not created for the purpose of conducting business with or appealing to the District of Columbia or its residents. (*Id.*) The computer server used by the paper to publish content on the Internet is located in Ohio. (*Id.* at ¶ 5.)

The Ashland Times-Gazette does not employ anyone from the District of Columbia, and none of the newspaper's reporters or staff members live in the District. (*Id.* at ¶ 10.) The paper does not solicit subscriptions to its newspaper in the District or anywhere else outside of Ohio. (*Id.* at ¶ 11.) A District resident wishing to obtain a subscription to the Ashland Times-Gazette would have to call or write the Ashland Times-Gazette's office in Ohio. (*Id.* at ¶ 8.) The Ashland Times-Gazette has no print subscribers that receive the newspaper by mail in the District of Columbia. (*Id.* at ¶ 9.) While the Ashland Times-Gazette provides a small sampling of articles for free on its website, most of the website's content can only be accessed by holders of a paid-for subscription. (*Id.* at ¶ 7.) The Ashland Times-Gazette has only one "web-only" subscriber in the District of Columbia: Mr. D. Jackson, who listed his address as 2542

Naylor Rd. SE APT 201, Washington, D.C.  20020-4052.[3]  (*Id.* at ¶ 9.)  Mr. D. Jackson

contacted the Ashland Times-Gazette on March 7, 2008 and purchased one month's

access to the paid subscription site.  (*Id.*)  Plaintiff has made no allegations and has

offered no evidence that anyone in the District besides the plaintiff has actually read any

of the Articles.  (See, Compl. and Am. Compl.)

The publisher of the Ashland Times-Gazette, Ashland Publishing, does not solicit

any business in the District. (Dix Decl. ¶ 15.)  It does not own and has never owned

assets in the District.  Nor has it owned, leased, or rented any real or personal property in

the District.  (*Id.*)  It has never paid taxes in the District, and other than this lawsuit, it has

never been accused of committing any tort or wrong in the District.  (*Id.*)  Finally,

Ashland Publishing does not derive any substantial revenue from goods used or services

rendered in the District.  (*Id.* at ¶ 16.)

**B.    The Articles.**

The Articles identified in plaintiff's Complaint and Amended complaint were

published on January 29, February 21, and February 27, 2008.  (Am. Compl. at ¶ 7.)

They were not delivered by the Ashland Times-Gazette to anyone in the District of

Columbia.  (Dix Decl. at ¶ 9.)  Of the three Articles, only the article published January

29, 2008 was available on the internet to non-subscribers.  (*Id.* at ¶ 14.)  The other two

articles were available to paid-for subscribers only.  (*Id.*)  The only paid-for subscriber in

the District of Columbia with access to these two articles is the plaintiff himself.  (*Id.* at ¶

9.)

---

[3] This solitary District of Columbia subscriber has the same name and address as the plaintiff, and he
purchased his one month internet subscription to the paper the very same day plaintiff's complaint was
filed.

All three articles were written in Ohio, focusing not on the plaintiff herein, but rather on the indictment of Peter Brandel for his role in procuring a fake affidavit from Joseph Cutlip, one of the boys molested by plaintiff in Ohio, for use in plaintiff's defamation case against Mr. Cutlip.  (*Id.* at ¶ 13.)

## ARGUMENT

I.  **THE COMPLAINT SHOULD BE DISMISSED BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER THE DEFENDANTS.**

Plaintiff's claims should be dismissed because this court lacks personal jurisdiction over the defendants.[4]  D.C. courts may only exercise personal jurisdiction over a nonresident defendant where (1) the defendant's activities fall within the provisions of the long-arm statute, D.C. Code Ann. § 13-423 (2008), and (2) the exercise of jurisdiction comports with the requirements of due process.  *United States of America v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995).

Plaintiff bears the burden of establishing that the court has jurisdiction over each defendant.  *FC Inv. Group LC v. IFX Markets, Ltd.*, 479 F.Supp.2d 30 (D.D.C. 2007); *see also Comsat Corp. v. Finishipyards S.A.M.*, 900 F. Supp. 515, 520 (D.D.C. 1995).  In evaluating personal jurisdiction, the court need not treat all of the plaintiff's allegations as true.  Instead, the court "may also receive and weigh affidavits and other relevant matter to assist in determining the jurisdictional facts."  *FC Inv. Group*, 479 F. Supp.2d 30, 35 (quoting *Jung v. Assoc. Amer. Med. Coll.*, 300 F. Supp.2d 119, 127 (D.D.C. 2004)); *see also Brunson v. Kalil & Co.*, 404 F. Supp.2d 221, 223 (D.D.C. 2005).  Plaintiff cannot meet his burden of establishing jurisdiction over Oslin or Ashland Publishing because plaintiff has failed to allege a cognizable basis for jurisdiction, and because the

---

[4] In order to expedite this matter, defendants will address the jurisdictional issue with respect to the proper corporate defendant, Ashland Publishing, LLC, the publisher of the Ashland Times-Gazette.

Declarations of Irv Oslin and Troy Dix establish that neither defendant has even minimum contacts with the District of Columbia.

## A.    Plaintiff Has Failed To Allege Any Cognizable Basis For Asserting Jurisdiction Over Defendants.

Personal jurisdiction comes in two distinct forms: "(1) general, 'all purpose' adjudicatory authority to entertain a suit against a defendant without regard to the claim's relationship *vel non* to the defendant's forum-linked activity, and (2) specific jurisdiction to entertain controversies based on acts of a defendant that touch and concern the forum." *Kopff v. Battaglia*, 425 F. Supp.2d 76, 81 (2006) (quoting *Steinberg v. Int'l Crim. Police Org.*, 672 F.2d 927, 928 (D.C. Cir. 1981)). Plaintiff's only jurisdictional allegations are that "though the defendants reside in Ohio, they caused publication and publicity of libelous material to put on the internet's world wide web, which caused direct injury to the plaintiff here in Washington" [*sic*] (Compl. at ¶ 1), and that defendants used popular search engines "to expose the entire planet to their publication." (Compl. at ¶ 15.) These allegations are insufficient to support a finding of either form of personal jurisdiction.

## 1.    Plaintiff Cannot Establish "Continuous And Systematic" Contacts Necessary To Support General Jurisdiction.

Under general jurisdiction, a state may exercise personal jurisdiction over a party even if the action is unrelated to that party's contacts with the state, but only if the party's contacts are "continuous and systematic." *FC Inv. Group*, 479 F. Supp. 2d at 36 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415, 104 S. Ct. 1868 (1984)); *see also Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 509 (D.C. Cir. 2002) (same); *El-Fadl v. Central Bank of Jordan*, 75 F.3d 668, 675 (D.C. Cir. 1996) (same). This court has construed D.C. Code Section 13-334 as providing general jurisdiction over a foreign corporation "doing business in the District" under certain

circumstances. *Id.* (citing *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp.2d 34, 44 n. 12 (D.D.C. 2003)).

Plaintiff cannot establish general personal jurisdiction over defendants because neither Oslin nor Ashland Publishing "engage in sustained business activities in a continuous and systematic way" with District of Columbia residents. *FC Inv. Group LC v. IFX Markets, Ltd.*, 479 F. Supp.2d 30 (2007). (See Oslin Decl. at ¶¶ 3-5, 11; and Dix Decl. at ¶¶ 9-11, 15-16.) In *FC Investment*, this court examined whether general personal jurisdiction could be established over a company that has no office in the District of Columbia on the basis that the company's website "does business" with District of Columbia residents. This court explained that when considering a website for the purpose of general personal jurisdiction, "the question is not whether District of Columbia residents 'can' transact business in the District with the non-resident defendant through the defendant's website, but if they actually 'do' engage in sustained business activities in a continuous and systematic way." *Id.* at 37 (citing *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp.2d 34, 52 (D.D.C. 2003) and *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 512-13 (D.C. Cir. 2002)).

Plaintiff is the only District resident who has done any "business" whatsoever with Oslin or Ashland Publishing. (See Dix Decl. at ¶ 9.) On the day he filed his complaint, plaintiff paid for a one month subscription to the paid-for content of the Ashland Times-Gazette's online edition. (*Id.*) As the *FC Investment* court concluded, "for the Court to assert general jurisdiction over the defendant based on a single, short-lived, and since-terminated customer relationship would 'stretch the concept of general

jurisdiction beyond what either the statute or due process permits.'" *FC Inv. Group*, 479

F. Supp. 2d at 37.

> **2.    Plaintiff Cannot Establish Specific Personal Jurisdiction Because His Allegations Do Not Satisfy Any Of The Grounds For Jurisdiction Enumerated In The District's "Long Arm Statute."**

The District of Columbia's "long-arm statute" is the starting point for a specific

jurisdiction analysis.  It provides in relevant part:

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's --
> > (1) transacting any business in the District of Columbia;
> > (2) contracting to supply services in the District of Columbia;
> > (3) causing tortious injury in the District of Columbia by an act or  omission in the District of Columbia;
> > (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;
> > (5) having an interest in, using, or possessing real property in the District of Columbia;
> > (6) contracting to insure or act as surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia at the time of contracting, unless the parties otherwise provide in writing; or
> > (7) marital or parent and child relationship in the District of Columbia . . .

D.C. Code § 13-423 (2008).

Plaintiff's allegations do not satisfy any of these statutory bases for jurisdiction.

Jurisdiction under District of Columbia Code Sections 13-423 (a)(1), (2), and (5)-(7) may

be dismissed out of hand,[5] and jurisdiction under Sections 13-423 (a)(3) and (a)(4) may be disposed of almost as easily.

Section 13-423(a)(3) requires that both tortious injury and an act predicate to it take place within the District, and publication of an article outside of the forum does not give rise to jurisdiction under this section. *See, e.g.*, *McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1300 (D.C. Cir. 1996) (holding that there was no basis for jurisdiction under subsection (3) where the defendant wrote the article in New York and delivered it to a publisher in New York); *see also*, *Moncrief v. Lexington Herald-Leader Co.*, 807 F.2d 217, 221 (D.C. Cir. 1986) (explaining that paragraph (a)(3) "is 'a precise and intentionally restricted tort section,' which 'stops short of the outer limits of due process,' and which confers jurisdiction only over a defendant who commits an act in the District which causes an injury in the District" (internal citations omitted)).

In *Moncrief*, the District of Columbia Circuit upheld the district court's decision that subsection (a)(3) did not confer jurisdiction over the newspaper defendant "because the 'act' which gave rise to the injury – the printing and mailing of the newspaper – occurred outside the District." *Id.* at 220. Likewise, in the instant case, all of the acts which give rise to the alleged injury – the writing, publishing and distribution of three newspaper articles – occurred in Ohio, outside of the District. (See, Oslin Decl. ¶¶ 7-10; Dix Decl. ¶¶ 4-10.) Thus paragraph (a) (3) of the District's long arm statute does not confer jurisdiction over defendants.

---

[5] (1) As established above, plaintiff's claim did not arise from any business transacted in the District of Columbia. The only business transaction defendants had with a District of Columbia resident was with plaintiff himself the day he filed his complaint. Such a transaction cannot possibly give rise to jurisdiction under the statute since the claim plaintiff pursues requires publication to a third party; (2) plaintiff's claim did not arise from any contract; (5) plaintiff's claim does not involve real property; (6) again, plaintiff's claim did not involve a contract; and (7) plaintiff's claim does not involve a marital or parent child relationship.

Section 13-423(a)(4) is of no more help to plaintiff. "Courts have interpreted section 13-423(a)(4) to be *more* restrictive than the Due Process Clause of the Constitution – meaning the District government has made a deliberate decision not to allow access to D.C. courts to every person who is injured here and otherwise could bring a claim for civil redress." *Kopff v. Battaglia*, 425 F. Spp.2d 76, 82 (D.D.C. 2006). Section 13-423(a)(4) contemplates jurisdiction when there is tortious injury within the District accompanied by any of three specified kinds of additional contacts between the District and the defendant, not necessarily related to the contested act or injury. This additional requirement, or "plus factor" must involve conduct "separate from and in addition to the in-state injury." *Id.*

Even if plaintiff can establish that the Articles injured him in the District of Columbia, "there is nothing in the complaint or in plaintiffs' subsequent filings to support a finding that one of the 'plus factors' required by the statute – regularly doing or soliciting business in the District, engaging in a persistent course of conduct directed toward the District, or deriving substantial revenue from goods used or consumed, or services rendered, in the District – exists for [plaintiff]." *Id.* at 84. (See Oslin Decl. at ¶ 11; Dix Decl. at ¶ 16.)

Indeed, Oslin and Ashland Publishing do not have any contacts whatsoever with the District of Columbia. Oslin is a resident of Ohio. He has never conducted any business in the District.[6] Oslin was in Ohio the entire time he researched and wrote the

---

[6] Moreover, Oslin has never (1) been a resident of the District; (2) been a member of, or employed by, any organization or business located in the District; (3) had an office, bank account, mailing address or telephone number in the District; (4) solicited any business in the District; (5) owned any assets in the District or owned, leased or rented any real or personal property in the District; (6) paid taxes in the District; (7) been accused of committing any tort or wrong in the District; or (8) distributed copies of any newspaper, including the Ashland Times-Gazette, in the District. (Oslin Decl. ¶¶ 3-5.)

Articles.  (*Id.* at ¶¶ 6-10.)  Likewise, publisher Ashland Publishing is a company organized and existing under the laws of the State of Delaware, with its principal place of business in Ashland, Ohio.  (See Dix Decl. ¶ 12.)  Ashland Publishing does not regularly do or solicit business in the District of Columbia or engage in any other persistent course of conduct in the District.  (*Id.* at ¶¶ 15-16.)  It does not derive any substantial revenue from goods used or services rendered in the District, and it has never (1) owned any assets in the District; (2) owned, leased or rented any real or personal property in the District; or (3) paid taxes in the District.  (*Id.*)  Accordingly, plaintiff cannot establish specific jurisdiction under any prong of the District's long-arm statute, and his claims should be dismissed.

 B.    **The Evidence Establishes That Defendants Do Not Have Sufficient Contacts With The District of Columbia To Satisfy Due Process.**

Wholly apart from plaintiff's inability to satisfy the requirements of the long-arm statute, plaintiff cannot establish that defendants' contacts with the District meet the minimum threshold to satisfy due process.  *McFarlane v. Esquire Magazine,* 74 F.3d 1296 (D.C. Cir. 1996) ("But *writing* an article for a publication that is circulated throughout the nation, including the District, hardly constitutes doing or soliciting business, or engaging in persistent course of conduct *within* the District.").  Under the due process clause of the Fourteenth Amendment to the United States Constitution, a state may exercise personal jurisdiction over a non-resident only when the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The contacts with the forum state must be extensive enough that the defendant "should reasonably anticipate being haled into court there." *Worldwide Volkswagen Corp.*, 444 U.S. 286, 297 (1980). For that reason, due process requires that the defendant "purposely avail itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotations omitted). The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Id.*

As demonstrated above in the discussion of the section (4) plus factors, defendants' only contact with the District of Columbia is that it has published an article available on the Internet that can be accessed anywhere in the world.[7] As the District of Columbia Circuit Court has unequivocally held, basing personal jurisdiction on the internet publication of a news article would offend due process:

> [P]ersonal jurisdiction surely cannot be based solely on the ability of District residents to access the defendants' websites, for this does not by itself show any persistent course of conduct by the defendants in the District. Access to a website reflects nothing more than a telephone call by a District resident to the defendants' computer servers, all of which apparently are operated outside of the District. And, as this court has held, mere receipt of telephone calls outside the District does not constitute persistent conduct 'in the District' within the meaning of the long-arm statute. . . . We do not believe that the advent of advanced technology, say, as with the Internet, should vitiate long-held and inviolate principles of federal jurisdiction. The Due Process Clause exists, in part, to give 'a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.' . . . In the context of the Internet [plaintiff's]

---

[7] And indeed, plaintiff's only jurisdictional allegations are that defendants used the world wide web "to expose the entire planet to their publication." (Compl. at ¶¶ 1 and 15.)

expansive theory of personal jurisdiction would shred these
constitutional assurances out of practical existence.  Our sister
circuits have not accepted such an approach, and neither shall we.

*GTE New Media Services Inc. v. Bellsouth Corp.*, 199 F.3d 1343, 1349-50 (D.C. Cir.

2000) (internal citations omitted).

Other courts are in accord.  *See, e.g., Young v. New Haven Advocate*, 315 F.3d

256, 262-63 (4th Cir. 2002), *cert. denied*, 538 U.S. 1035 (2002) ("application of *Calder*

in the Internet context requires proof that the out-of-state defendant's Internet activity is

expressly targeted at or directed to the forum state"); *Oasis Corp. v. Judd*, 132 F. Supp.2d

612, 623 (S.D. Ohio 2001) (finding significant that "the computers hosting Defendants'

site are not located in [the forum state]," and "the site is not directed toward [a forum

state] audience," and stating "no federal court has ever upheld personal jurisdiction solely

on the ground that the defendant's Web site happened to be accessible from the forum

state; this Court shall not be the first."); *Bailey v. Turbine Design, Inc.*, 86 F. Supp.2d

790 (W.D. Tenn. 2000) (although foreseeable that plaintiff could suffer harm in his home

state, there was no evidence that defendants had deliberately or knowingly targeted the

forum state); *Schnapp v. McBride*, 64 F. Supp.2d 608 (E.D. La. 1998) (granting

defendant newspaper's motion to dismiss for lack of jurisdiction because the

publication's web site was used only for posting information and limited advertising

outside the forum state and the newspaper delivered only a miniscule number of

subscriptions to forum state residents).

The foregoing authorities make clear that there is no basis for a District of Columbia court to assert jurisdiction over defendants in this case, and it should be dismissed.

## II.    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR THE ADDITIONAL REASON THAT PLAINTIFF CANNOT PROVE THAT DEFENDANTS PUBLISHED A FALSE STATEMENT.

A Rule 12(b)(6) motion is properly granted "if the plaintiff fails to plead 'enough facts to state a claim for relief that is plausible on its face.'" *Bailey v. Mutual of Omaha Ins. Co.*, 534 F. Supp.2d 43 (D.D.C. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)). In considering a Rule 12(b)(6) motion, this Court must accept all well-pled allegations as true and construe the facts and reasonable inferences derived there from in the light most favorable to the plaintiff. *Stephens v. United States*, No. 07-cv-1162, 2007 U.S. Dist. LEXIS 72058, *5 (D.D.C. Sept. 28, 2007) (Huvelle, J.) (citing *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004)). However, this Court "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint," nor must it "accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

The plaintiff in a defamation action must prove falsity by a preponderance of the evidence. *Klayman v. Segal*, 783 A.2d 607, 613 (D.C. 2001) (citing *Moldea v. New York Times Co.*, 15 F.3d 1137, 1142 (D.C. Cir. 1994)); *Carter v. Hahn*, 821 A.2d 890 (D.C. 2003) (citing *Beeton v. District of Columbia*, 779 A.2d 918, 923 (D.C. 2001) (quoting *Crowley v. North Am. Telecoms. Ass'n*, 691 A.2d 1169, 1173 n.2 (D.C. 1997))). If a plaintiff cannot prove falsity, the truth of the publication is a complete defense to a libel action. *Lohrenz v. Donnelly*, 223 F. Supp.2d 25, 50 (D.D.C. 2002), *aff'd*, 350 F.3d 1272

(D.C. Cir. 2003); *Ford Motor Credit Co. v. Holland*, 367 A.2d 1311, 1313 n. 1 (D.C.

1977); *Farrington v. Bureau of Nat'l Affairs, Inc.*, 596 A.2d 58, 59-60 (D.C. 1991), *cert*

*denied*, 504 U.S. 912 (1992); *Saidi v. Washington Metro. Area Transit Auth.*, 928 F.

Supp. 21 (D.D.C. 1996).  If a publication is substantially true, then it is "true" for

defamation purposes.  *Southern Air Transport, Inc. v. American Broadcasting Cos.*, 678

F. Supp. 8 (D.D.C. 1988).  Slight inaccuracies of expression are immaterial to the issue of

substantial truth.  *See, Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1296

(D.C. Cir. 1988), *cert. denied*, 488 U.S. 825 (1988).

　　　Plaintiff claims that defendants defamed him by calling him a "convicted

pedophile."  (Am. Compl. at ¶¶ 6-7.)  Yet he admits that he was convicted in 2000 of

violating Ohio Revised Code Section 2907.05 (A)(5), gross sexual imposition, and that

his victims were two young boys, aged 14 and 13 years old.  (Compl. at ¶ 3.)  The

American Heritage Dictionary defines "pedophile" as "an adult who is sexually attracted

to a child or children."  *The American Heritage® Dictionary of the English Language,*

*Fourth Edition*. Houghton Mifflin Company, 2004.

http://dictionary.reference.com/browse/pedophile (accessed: April 22, 2008).  Plaintiff

obviously qualifies as someone who was "sexually attracted to a child or children."  Thus

plaintiff's own admissions belie his claims.[8]

---

[8]  Plaintiff tries to circumvent his history of being convicted of sexually abusing children by claiming that
he does not qualify under the DSM-IV definition of a person afflicted with the psychiatric disease of
pedophilia.  While the DSM-IV definition may be a fine point for psychiatrists and psychologists to argue,
newspapers are written for the general public and words used in the newspaper are to be given their
ordinary meaning in common English.  *See, e.g., Weyrich v. New Republic Inc.*, 235 F.3d 617, 625-26
(D.C. Cir. 2001) (political commentary concerning plaintiff's "paranoia" is used in popular not clinical
sense and thus is not actionable).  Accordingly, plaintiff's attempt to argue technical, psychological
distinctions must give way to the common usage of the language, as set forth, for instance, in the
dictionary.

Plaintiff has specifically stated that he does not wish to revisit his 2000 criminal case. (Compl. at ¶ 4.) However, without alleging and proving that he did not sexually assault the boys he was convicted of abusing, he cannot state a claim for defamation. The District of Columbia Court of Appeals faced a similar situation in *Foretich v. CBS, Inc.*, 619 A.2d 48 (D.C. 1993). In that case, the appellant had filed a memorandum in which he stated that he "does not plan in this action to prove the falsity of the allegation that he sexually abused his two daughters," and that he "submitted that he has never abused his daughters, sexually or in any other fashion." *Id.* at 53. Consequently, the Court of Appeals ruled that without proving the allegation that he sexually abused his daughters was false, appellant could not demonstrate that the statements were capable of being defamatory.

Furthermore, even if plaintiff wanted to prove that he did not have sexual relations with young boys, he is estopped from doing so now. *See Hinton v. Shaw Pittman Potts & Trowbridge*, 257 F. Supp.2d 96 (D.D.C. 2003) (dismissing defamation claim that would require the re-litigation of facts essential to the plaintiff's criminal conviction). Collateral estoppel, or claims preclusion, bars the re-litigation of issues previously tried and decided in a court of competent jurisdiction involving the same or different parties. *See Ashe v. Swenson*, 387 U.S. 436, 443-44 (1970) (collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issues cannot be litigated between the same parties in any future lawsuit."); *accord Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992). "A criminal conviction is conclusive proof and operates as an estoppel on the

defendants as to the facts supporting the conviction in a subsequent civil action." *United States v. Uzzell*, 648 F. Supp. 1362, 1363 (D.D.C. 1986).

In short, the historical record admitted by plaintiff established that he was sexually attracted to and in fact molested two young boys.  He cannot challenge those historical facts, and they fully support the use of the term "pedophile," in common English parlance, to describe plaintiff.

## CONCLUSION

For the reasons discussed above, this action should be dismissed pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.

/s/ *Mark I. Bailen*
Mark I. Bailen (459623)
BAKER & HOSTETLER, LLP
1050 Connecticut Avenue N.W.
Suite 1100
Washington, D.C. 20036
Tel: (202) 861-1500
Fax: (202) 861-1783
Email: *mbailen@bakerlaw.com*

LOUIS A. COLOMBO (0025711)
MELISSA A. DEGAETANO (0080567)
BAKER & HOSTETLER, LLP
3200 National City Center
1900 East Ninth Street
Cleveland, OH 44114-3485
Telephone: (216) 621-0200
Facsimile: (216) 696-0740
Counsel for Defendants

## <u>CERTIFICATE OF SERVICE</u>

A copy of the foregoing Defendants' Motion To Dismiss which was electronically filed on this 25th day of April, 2008, was served by U.S. mail, postage prepaid, on this 25th day of April, 2008 upon the following:

David Copeland-Jackson
2542 Naylor Road SE #201
Washington, D.C. 20020

Plaintiff *Pro Se*

/s/ *Mark I. Bailen*

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DAVID COPELAND-JACKSON,

     Plaintiff,

  vs.

IRV OSLIN, et al.,

     Defendants.

CIVIL ACTION NO. 08-00448 (ESH)

## DECLARATION OF TROY DIX

I, Troy Dix, make the following declaration pursuant to the provisions of 28 U.S.C. § 1746:

1. The statements contained in this declaration are based upon my personal knowledge or upon records maintained in the normal course of business at the Ashland Times-Gazette, and I am competent to testify thereto.

2. I have been employed by the Ashland Times-Gazette since on or about January, 1999.

3. I am currently the president of Ashland Publishing Co., LLC, which is the publisher of the Ashland Times-Gazette.

4. The Ashland Times-Gazette is a local Ohio newspaper that is published Monday through Saturday and that circulates primarily in Ashland County, Ohio, with some limited content also published on the Internet. It is a small-town community newspaper, the whole focus of which is to provide complete information about Ashland County to residents of Ashland County.

1

5.    The computer server used by the Ashland Times-Gazette to publish content on the Internet is located in Ohio.

6.    The Ashland Times-Gazette's website was created as a "hyper-local" site which serves as a source of news, weather and information for and about Ashland County.

7.    While the Ashland Times-Gazette provides a small sampling of articles for free, most articles cannot be accessed by the public.  Most of the website's content can only be accessed by holders of a paid-for subscription.

8.    Visitors to the Ashland Times-Gazette website may register in order to post comments or participate in the forums.  However, internet registration alone will not give a visitor access to the paid-for subscription content.  Visitors wishing to access this content must call or write the Ashland Times-Gazette in Ohio and make arrangements to pay for subscription service.

9.    The Ashland Times-Gazette has no print subscribers that receive the newspaper by mail in the D.C. area.  The Ashland Times-Gazette has only one "web-only" subscriber in the D.C. area:

> Mr. D. Jackson
> 2542 Naylor Rd. SE APT 201
> Washington, DC  20020-4052
> djackson@dcemail.com

Mr. D. Jackson contacted the Ashland Times-Gazette on March 7, 2008 and purchased one month's access to the paid subscription site.

10.    The Ashland Times-Gazette does not employ anyone from the District of Colombia ("D.C."), and none of the newspaper's reporters or staff members live in D.C.

11.     The Ashland Times-Gazette does not solicit subscriptions to its newspaper in D.C. or anywhere else outside of Ohio.   Rather, it solicits subscriptions from readers in the Ashland, Ohio area.

12.     The Ashland Times-Gazette is published by Ashland Publishing Co., LLC, a Delaware limited liability company.   The principal place of business for both the Ashland Times-Gazette and Ashland Publishing Co., LLC is 40 East 2nd Street, Ashland, Ohio  44805.

13.     Ashland Publishing Co., LLC published the January 29, February 21, and February 27, 2008 articles about Peter Brandel's indictment for forgery and the use of a sham legal process, each of which contains some reference to Mr. Jackson's criminal convictions.

14.     Of those three articles, only the one published on January 29, 2008 appeared in the "free" section of the Ashland Times-Gazette's website.   The other two articles were both available to paid-for subscribers only.

15.     Ashland Publishing Co., LLC does not solicit any business in D.C.  It does not own and has never owned assets in D.C.  Nor has it owned, leased, or rented any real or personal property in D.C.  It has never paid taxes in D.C.  Other than this lawsuit, it has never been accused of committing any tort or wrong in D.C.

16.     Ashland Publishing Co., LLC does not regularly do or solicit business in D.C. or engage in any other persistent course of conduct in D.C.  It does not derive any substantial revenue from goods used or services rendered in D.C.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 2/, 2008.

Troy Dix

3

EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**DAVID COPELAND-JACKSON,**

Plaintiff,

vs.

**IRV OSLIN, et al.,**

Defendants.

CIVIL ACTION NO. 08-00448 (ESH)

**DECLARATION OF IRVIN OSLIN**

I, Irvin Oslin, make the following declaration pursuant to the provisions of 28 U.S.C. § 1746:

1.    I am a reporter for the Ashland Times-Gazette, a daily newspaper in Ashland, Ohio.

2.    I currently reside in the state of Ohio.

3.    I have never been a resident of the District of Columbia ("D.C."). I have never been a member of, or employed by, any organization or business located in D.C. I have never had an office, bank account, mailing address or telephone number in D.C.

4.    I have never solicited any business in D.C. I do not own and have never owned any assets in D.C., nor have I owned, leased or rented any real or personal property in D.C. I have never paid taxes in D.C. Other than this lawsuit, I have never been accused of committing any tort or wrong in D.C.

1

5.    I have never conducted any business in D.C., and specifically have never distributed copies of any newspaper, including the Ashland Times-Gazette, in D.C.

6.    I researched and wrote the January 29, February 21, and February 27, 2008 Ashland Times-Gazette articles concerning the indictment of Peter Brandel for forgery and the use of a sham legal process, each of which contains some reference to Mr. Jackson's criminal convictions.

7.    In preparing those articles, I never visited D.C.  I prepared and wrote the articles entirely in Ohio.

8.    All substantive interviews or contacts made in connection with these articles were done with individuals in the state of Ohio.

10.    I never had any conversation with anyone in D.C. concerning the articles identified in Plaintiff's complaint.

11.    I do not regularly do or solicit business in D.C. or engage in any other persistent course of conduct in D.C.  I do not derive any substantial revenue from goods used or services rendered in D.C.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 21, 2008.

Irvin Oslin

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

DAVID COPELAND-JACKSON,                )
                                       )
                    Plaintiff,         )
                                       )
vs.                                    )          CASE NO.: 1:08-cv-00558 (ESH)
                                       )
IRV OSLIN   and                        )
DIX COMMUNICATIONS,                    )
                                       )
                    Defendants.        )

<u>ORDER</u>

On this _____ day of _____, 2008, upon consideration of defendants' Motion to

Dismiss, plaintiff's opposition thereto and any reply, it is hereby

ORDERED that the Motion to Dismiss is hereby GRANTED.


_____
ELLEN S. HUVELLE
United States District Judge