UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

|                                            |     |                                   |
|--------------------------------------------|-----|-----------------------------------|
| DAVID COPELAND-JACKSON,                    | )   |                                   |
|                                            | )   |                                   |
|                          Plaintiff,        | )   |                                   |
|                                            | )   |                                   |
|                       v.                   | )   | Civil Action No. 08-00558 (ESH)   |
|                                            | )   |                                   |
| IRV OSLIN, *et al.*,                       | )   |                                   |
|                                            | )   |                                   |
|                          Defendants.       | )   |                                   |

_____)

## MEMORANDUM OPINION

Plaintiff David Copeland-Jackson has filed a *pro se* complaint in this Court alleging

defamation, negligence, false light, invasion of privacy, and intentional infliction of emotional

distress against defendants, an Ohio newspaper and its reporter, based on the publication of three

articles (the "Articles") in the Ashland-Times Gazette in which plaintiff is referred to as a

pedophile.[1] Defendants Irv Oslin and Dix Communications ("defendants") have filed a motion

to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6). For the reasons stated herein,

defendants' motion will be granted.

## BACKGROUND

Plaintiff resides at 2542 Naylor Road S.E. #201, Washington D.C. 20020. (Compl.,

caption). On June 16, 2000, plaintiff entered a nolo plea to two counts of "gross sexual

imposition" involving two teenagers. His conviction was affirmed by the Ohio Court of Appeals

_____

[1] Plaintiff subsequently amended his complaint to add a third defendant, Topix L.L.C., a
company based in California that republishes materials from numerous news providers on its
website. (Am. Compl. ¶ 20.) Topix may not have been served as of this date.

on March 26, 2001.  *See State v. Copeland-Jackson*, No. 00COA01378, 2001 WL 310635, at * 3

(Ohio Ct. App. Mar. 26, 2001).  His later attempts to withdraw his plea were also rejected by the

Ohio courts.  *See State v. Copeland-Jackson*, N. 02COA018, 2003 WL 855578, at *3 (Ohio Ct.

App. Mar. 5, 2003).

On January 29, February 21, and February 27, 2008, the Ashland Times Gazette

published the Articles.  (Am. Compl. ¶ 7.)  Defendant Irv Oslin is a reporter for the Ashland

Times-Gazette who prepared and wrote the Articles.  Oslin is a resident of Ohio.  (*See* Decl. of

Irv Oslin ["Oslin Decl."] at ¶ 2.)  He has never been a resident of the District of Columbia, has

never worked in the District, and has never conducted any business in the District.  (*Id.* ¶¶ 2-3,

5.)  Oslin researched, prepared, and wrote the Articles in Ohio.  (*Id.* ¶¶ 6-10.)

The Ashland Times Gazette is a local Ohio newspaper that circulates primarily in

Ashland County, Ohio, with some limited content available through its website.  (*See* Decl. of

Troy Dix ["Dix Decl."] ¶ 4.)   The Ashland Times Gazette does not employ anyone from the

District of Columbia, nor does it solicit subscriptions to its newspaper in the District or in any

state outside of Ohio.  (*Id.* ¶¶ 10-11.)   The Ashland-Time Gazette has no print subscribers who

receive the newspaper by mail in the District of Columbia.   (*Id.* ¶ 9.)

The Ashland-Times Gazette's website serves a source for news, weather, and information

for and about Ashland County.  (*Id.* ¶ 6.)  The computer server used by the paper to publish

content on the Internet is located in Ohio.  (*Id.* ¶ 5.)   Most of the website's content is available

only to paid subscribers.  (*Id.* ¶ 7.)  Of the Articles, only the one published January 29, 2008, was

available on the Internet to non-subscribers.  (*Id.* ¶ 14.)  The Ashland Times-Gazette has only

one "web-only" subscriber in the District of Columbia: Mr. D. Jackson, who resides at 2542

Naylor Rd. S.E. Apt. 201, Washington D.C. 20020.[2]  (*Id.* ¶ 9.)

The publisher of the Ashland Times Gazette, Ashland Publishing,[3] is a Delaware limited

liability company located at 40 East 2nd Street, Ashland, Ohio, 44805.  (*Id.* ¶ 12.)  Ashland

Publishing does not solicit any business or own any assets in the District.  (*Id.* ¶ 15.)  It has never

paid taxes in the District, nor has it, prior to this lawsuit, been accused of committing any tort in

the District.  (*Id.*)  It does not derive any substantial revenue from conducting business in the

District.  (*Id.* ¶ 16.)

### ANALYSIS

**I.      The Court Lacks Personal Jurisdiction Over Defendants**

Defendants first argue that the complaint should be dismissed because they are not

subject to personal jurisdiction in the District of Columbia.  (*See* Defs.' Mot. 5.)  " The D.C.

long-arm statute, D.C. Code Ann. § 13-423, authorizes exercise of personal jurisdiction based on

a defendant's conduct in or directed toward the District of Columbia."  *NAWA USA Inc. v.*

*Bottler*, 533 F.Supp.2d 52, 55 (D.D.C. 2008).    The District's long-arm statute provides, in

relevant part, for the exercise of personal jurisdiction over a non-resident defendant who (1)

transacts business; (2) supplies services; (3) causes tortious injury; or (4) has an interest or owns

real property in the District.  *See* D.C. CODE ANN. § 13-423 (2008).  The statute also permits the

---

[2] The single D.C. subscriber has the same name and address as plaintiff and the subscription was purchased the same day plaintiff's complaint was filed.  (*See* Defs.' Mot. 4 n. 3.)

[3] Plaintiff's complaint incorrectly alleges that "Dix Communications website . . . owns the Ashland Times Gazette newspaper and operates the website . . . ."  In its motion, defendant has addressed the jurisdictional issue with respect to the proper corporate defendant, Ashland Publishing L.L.C.

exercise of jurisdiction over a non-resident defendant for tortious conduct committed outside of

the District if the defendant "regularly does or solicits business, engages in any other persistent

source of conduct, or derives any substantial revenue from goods used or consumed, or services

rendered, in the District of Columbia . . . ." *Id.* "This provision is given an expansive

interpretation that is coextensive with the due process clause." *Helmer v. Doletskaya*, 393 F.3d.

201, 205 (D.C. Cir. 2004) (citations and internal quotation marks omitted). Therefore, the

"statutory and constitutional jurisdictional questions, which are usually distinct, merge into a

single inquiry here." *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995).

The Court must therefore determine whether "there are minimum contacts between the

defendant and the forum such that the maintenance of the suit does not offend traditional notions

of fair play and substantial justice ." *Pease v. Burke*, 535 F.Supp.2d 150 (D.D.C. 2008) (quoting

*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

Furthermore, "the defendant's conduct and connection with the forum State must be such that he

should reasonably anticipate being haled into court there." *Id.* (citing *World-Wide Volkswagen*

*Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). The Court lacks personal jurisdiction unless

defendants "purposefully avail[ed] [themselves] of the privilege of conducting activities within

[the District], thus invoking the benefits and protections of its laws." *Burger King Corp. v.*

*Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotation marks omitted).

Plaintiff bears the burden of establishing that the Court has jurisdiction over each

defendant. He alleges that "though the defendants reside in Ohio, they caused publication and

publicity of libelous material to put on the internet's world wide web, which caused direct injury

to the plaintiff here in Washington" (Compl. ¶ 1), and that defendants used popular search

engines "to expose the entire planet to their publication." (*Id.* ¶ 15.)  The D.C. Circuit has made

clear that the mere act of "*writing* an article for a publication that is circulated throughout the

nation, including the District, hardly constitutes doing or soliciting business, or engaging in a

persistent course of conduct *within* the District."  *McFarlane v. Esquire Magazine*, 74 F.3d 1296,

1300 (D.C. Cir. 1996) (emphasis in original).  This statement would seem even more apropos to

an article written for an Ohio publication that is distributed almost exclusively in Ohio.

Furthermore, the D.C. Circuit has also explained that "personal jurisdiction . . . cannot be based

solely on the ability of District residents to access the defendants' websites, for this does not by

itself show any persistent course of conduct by the defendants in the District."  *GTE New Media*

*Services Inc. v. Bellsouth Corp.*, 199 F.3d 1343, 1349-50 (D.C. Cir. 2000).  *See also Young v.*

*New Haven Advocate*, 315 F.3d 256, 262-63 (4th Cir. 2002) ("[A]pplication of *Calder* in the

Internet context requires proof that the out-of-state defendant's Internet activity is expressly

targeted or directed to the forum state.")   Plaintiff has therefore failed to make any showing that

defendants purposefully availed themselves of the privilege of doing business in the District,

such that the exercise of jurisdiction over them would not offend due process.  Plaintiff's

complaint must therefore be dismissed under Fed. R. Civ. P. 12(b)(2).

**II.    Plaintiff Cannot Demonstrate that Defendants Published a False Statement**

Furthermore, even assuming *arguendo* that the Court had jurisdiction over the defendants

(which it does not), plaintiff's case would fail because plaintiff has failed to "state a claim for

relief that is plausible on its face."  *Bailey v. Mutual of Omaha Ins. Co.*, 534 F.Supp.2d 43, 50

(D.D.C. 2008) (quoting *Bell Atlantic v. Twombly*, 127 S.Ct. 1955, 1974 (2007) (internal

quotation marks omitted)).   To make out a claim for defamation, plaintiff must demonstrate by a

preponderance of the evidence that the statements made about him were false. *Klayman v.*

*Segal*, 783 A.2d 607, 613 (D.C. 2001) (citing *Moldea v. New York Times Co.*, 15 F.3d 1137,

1142 (D.C. Cir. 1994)).  The truth of the publication is a complete defense in a libel action.

*Lohrenz v. Donnelly*, 223 F.Supp.2d 25, 59 (D.D.C. 2002).  If a publication is substantially true,

then it is "true" as a legal matter for defamation purposes.  *See Benic v. Reuters America, Inc.*,

357 F.Supp.2d 216, 221 (D.D.C. 2004).

Plaintiff claims that defendants defamed him by referring to him as a "convicted

pedophile."  (Am. Compl. ¶¶ 6-7.)   He was, however, convicted of (and in fact pled to)  two

counts of "gross sexual imposition" involving two boys, aged 14 and 13 years old.   The

dictionary definition of "pedophile" is "an adult who is sexually attracted to a child or young

children"[4] and plaintiff's conviction indicates that this descriptor is substantially accurate.[5]

Plaintiff maintains that defendants should not have characterized him as a pedophile in

the Articles because they "do[] not know with an absolute certainty if Mr. Jackson committed

any offense . . . . [They were] free to contemplate the idea that any charge against Mr. Jackson

resulted from false allegations and legal error."  (Am. Compl. ¶ 5(a).)  However, "[a] criminal

conviction is conclusive proof and operates as an estoppel on the defendant[] against as to the

---

[4] THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed. 2006),
http://dictionary.reference.com/browse/pedophile (last accessed May 29, 2008).

[5]  Plaintiff contends that he does not technically qualify under the DSM-IV definition of a
person afflicted with the psychiatric disease of pedophilia.  However, " [i]f the gist or 'sting' of
the statement is substantially true, 'minor inaccuracies will not give rise to a defamation claim.'"
*AIDS Counseling and Testing Centers v. Group W. Television, Inc.*, 903 F.2d 1000, 1004 (4th
Cir. 1990) (quoting *Liberty Lobby, Inc. v. Rees*, 852 F.2d 595, 601 (D.C. Cir. 1988)).   Given
that the "gist" of defendants' characterization of plaintiff is accurate, whether plaintiff
technically qualifies as a pedophile for diagnostic purrpose is irrelevant.

facts supporting the conviction in a subsequent civil action." *United States v. Uzzell*, 648

F.Supp. 1362, 1363 (D.D.C. 1986).   As plaintiff recognizes (see Compl. ¶ 4), he may not use

this action to relitigate his criminal case.  Because plaintiff's conviction establishes that he

committed "gross sexual imposition" involving children, he cannot demonstrate by a

preponderance of the evidence that the statements made in the Articles were false.   Plaintiff's

complaint therefore must be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

**<u>CONCLUSION</u>**

For these reasons, defendants' motion to dismiss [Dkt. 9] is granted, and the captioned

case is dismissed with prejudice with respect to defendants Irv Oslin and Ashland Publishing.

An appropriate Order accompanies this Memorandum Opinion.


                                                         _____/s/_____
                                                         ELLEN SEGAL HUVELLE
                                                         United States District Judge


DATE:    May 29, 2008